## Case No. 2,235.

In re BUTLER.

Ex parte WENDLINGER.

[2 Hughes, 247.][1]

District Court, E. D. Virginia. Nov. Term, 1875.

VENDOR'S LIEN—LOSS BY LACHES.

Where a bond for part of the purchase-money of land has been assigned by the vendor, and the vendor, upon a representation by the vendee that he has paid the said bond to its holder, makes a deed to him of the land, and the deed is punctually recorded, and the holder of the bond, who resides in the same county with the vendor and vendee and the land, fails to assert his equity in the land for fifteen years, during which other liens against the vendee attach upon the land, *held*, that the equity of the holder of the bond is lost by laches, or is no greater than the equities subsequently attaching to the land, and that the court will not hear a prayer to subject the land to the payment of the bond.

In bankruptcy. Some time in the year 1857 James T. Butler purchased from H. C. Peatross a tract of land in Caroline county, known as "Ready Church," containing 183 acres, for the sum of $1,830. In August, 1857, James T. Butler executed his bond to Peatross for $524.63, in part payment of this land. Peatross assigned this bond to T. L. Scott. In

November, 1858, Butler informed Peatross that he had settled this bond with Scott, or that the balance of accounts between himself and Scott would show the bond to be about settled, or something to that effect. Thereupon Peatross and wife executed a deed to Butler for this land, a copy of which is filed with the papers. This deed was promptly admitted to record in Caroline county, where the land was situated. T. L. Scott has himself become a bankrupt, and his assignee [C. H. Wendlinger], by petition dated 8th May, 1873, not filed in this cause until a date not known, claims that this bond was not settled by Butler, although Scott admits that there were unsettled accounts between them, and prays that what is due on the bond may be satisfied out of the land. Scott had always retained this bond till his assignee filed it with his deposition as a claim against James T. Butler in this cause. Under the laws of Virginia, since the adoption of the Code of 1849, there can, in general, be no vendor's lien for the purchase-money of real estate, where a deed actually passes, unless it be expressly reserved in the deed. Here the vendor (Peatross) assigned a bond of the vendee (Butler) for part of the purchase-money of land to Scott, and soon afterwards, on a representation of the vendee that the bond had been paid, made a deed of the land to the vendee (Butler), containing no reservation of lien for the bond held by Scott. This deed, when recorded, was notice to the world of its existence, binding by law on all subsequent purchasers; and Scott, who lived in the county and in the very neighborhood of the vendor and vendee, the vendee, Butler, having possession of the land all the while, and having dealings with Scott as a merchant, held his bond for more than twelve years without any inquiry as to Butler's title. Butler had the possession and the legal title until his bankruptcy, when both title and possession passed to his assignee for the benefit of, first, Butler's lien creditors; and, second, Butler's general creditors. The liens by judgment accrued after the deed of Peatross to Butler. It is not pretended that Scott gave notice of his lien to anybody. These judgments all attached without notice of the existence of Scott's claim. Butler's assignee is, of course, clothed only with the title which Butler had.

I do not feel disposed to deny that Scott had an equitable lien upon the land after the deed of Peatross to Butler, which he could have enforced against Butler. He could have enforced it for the reason that a representation of Butler to Peatross, whether true or false, could not deprive Scott of any rights he may have had. If it were a fact (which is vigorously denied) that Butler did owe Scott the bond at the time Butler obtained the deed from Peatross, then Scott's lien in equity remained notwithstanding the deed made by Peatross. But it is also true that in the period of more than twelve years that followed other equities attached upon that same

[2] This subject is discussed, and a somewhat different view taken, in "Slaughter House Cases," 10 Wall. [77 U. S.] 273.

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

land, equities full as strong as Scott's, and attached because of Scott's laches in not enforcing his own equity. The deed was on record during all the time, and Butler was in possession of the land during the same long period. Yet there was no assertion of his rights by Scott. I think the case falls within the familiar rule of equity jurisprudence, that where equities are equal the legal title must prevail.

But even if this rule should not be applied as against a vendor's lien that has been defeated by misrepresentation, still, the extraordinary laches of Scott, the holder of the bond for part of the purchase-money, in not asserting his rights for more than twelve years, must be held in a case like the present to have disabled his assignee from now preferring it. It seems to me to be the duty of the court in the present case, to refuse to hear this application for the enforcement of this claim upon the land in question. Bayley v. Greenleaf, 7 Wheat. [20 U. S.] 46. The petition of Scott's assignee in bankruptcy is therefore dismissed.